**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3064-18T3

BOOTH MOVERS LTD,

     Plaintiff-Appellant,

v.

SLEEPABLE SOFAS LTD.,
CARLYLE CUSTOM
CONVERTIBLES LTD., and
AVERY BOARDMAN LTD.,

     Defendants,

and

DESIGN FURNITURE
HOLDINGS INC.,

     Defendant-Respondent.

_____

Argued November 14, 2019 – Decided November 26, 2019

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4341-17.

Michael J. Grohs argued the cause for appellant (Saiber LLC, attorneys; Michael J. Grohs, on the briefs).

Linda Singer Roth argued the cause for respondent (Tarter Krinsky & Drogin LLP, attorneys; Linda Singer Roth, on the brief).

PER CURIAM

Plaintiff Booth Movers Ltd. (Booth) appeals from a February 6, 2019 order granting summary judgment in favor of defendant Design Furniture Holdings, Inc. (DFH), and denying Booth's cross-motion for discovery. We affirm, substantially for the reasons set forth in the well-reasoned opinion of Judge Robert C. Wilson.

We need not repeat the factual history of this case as it has been extensively recited in Judge Wilson's opinion. Instead, we summarize pertinent facts from the record in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co., 142 N.J. 520 (1995).

Booth entered into a sublease with Sleepable Sofas Ltd. (Sleepable) in October 2017, several months before DFH came into existence. The sublease permitted Booth to sublet 10,500 square feet of warehouse space from Sleepable at 6 Empire Boulevard in Moonachie. Sleepable had occupied the warehouse space since at least March 2017 under a prime lease. While at the warehouse space, Sleepable manufactured furniture and assembled the furniture products of Carlyle

2

A-3064-18T3

Custom Convertibles Ltd. (Carlyle) and Avery Boardman Ltd. (Avery). Carlyle and Avery also sold furniture and other home furnishings under their respective brand names.

Ira Glazer, the eventual president and CEO of DFH, became interested in acquiring certain assets of Carlyle and Avery, as he understood these businesses intended to dissolve. On March 6, 2017, Glazer formed DFH as a holding company for his Ferrell Mittman furniture brand. One week later, DFH signed an Asset Purchase Agreement (APA) with Carlyle, Avery, Donna DeMatteo (the sole shareholder of Carlyle and Avery) and Darren DeMatteo (Mrs. DeMatteo's son) to purchase some of Avery's and Carlyle's assets.

On March 10, 2017, Sleepable's CFO notified Booth in an email that Sleepable was going out of business. Booth attempted to pay rent directly to the prime landlord but was advised it could not do so without Sleepable's consent.

Booth filed a complaint against each defendant named in this matter, seeking damages for breach of the sublease. The complaint asserted six causes of action, namely: (1) breach of contract; (2) contractual indemnification; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) conversion; and (6) violations of the New Jersey Consumer Fraud Act.

A-3064-18T3

DFH was the only defendant to answer Booth's complaint. Booth obtained a default judgment in the amount of $221,256 against the remaining defendants. Booth unsuccessfully attempted to collect on this judgment through a writ of execution.

Litigation continued between Booth and DFH. In August 2018, DFH consented to Booth's request to extend the discovery end date to October 8, 2018. On September 20, 2018, Booth served interrogatories and document requests on DFH. In October 2018, DFH objected to the interrogatories, arguing they were untimely, and objected to the document requests, asserting they were "vague, ambiguous, overbroad and unduly burdensome."

In November 2018, DFH filed a motion for summary judgment. Booth opposed the motion and cross-moved for the production of discovery. On February 6, 2019, Judge Wilson granted DFH's motion for summary judgment, denied Booth's discovery application, and dismissed Booth's complaint with prejudice.

On appeal, plaintiff raises the following arguments:

POINT I

> THE TRIAL COURT ERRED IN CONCLUDING THAT THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT ON THE ISSUE OF CORPORATE SUCCESSOR LIABILITY.

> A. The Traditional Rule of Successor Non-Liability.

B. The Judicially-Created Exceptions to the Traditional Rule.

C. The "De Facto merger" or "Mere Continuation" Exception.

D. The APA Does Not Foreclose a Finding of Successor Liability.

E. A Genuine Issue of Material Fact Exists as to Whether DFH Assumed Liabilities and Acquired Assets of Sleepable.

F. A Genuine Issue of Material Fact Exists as To Whether a "De Facto Merger" or "Mere Continuation" Occurred With Respect to Carlyle and Avery.

POINT II

THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S CROSS-MOTION FOR ADDITIONAL DISCOVERY PURSUANT TO RULE 4:46-5.

Preliminarily, we observe that where one company sells or otherwise transfers the entirety of its assets to another company, generally the transferee of those assets is not liable for the debts of the transferor company. Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 340 (1981) (citations omitted). There are four well-established exceptions to this traditional approach, specifically where:

> (1) the purchasing corporation expressly or impliedly agrees to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4)

the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

[Id. at 340-41.]

In McKee v. Harris-Seybold Co., 109 N.J. Super. 555 (Law Div. 1970), aff'd 118 N.J. Super. 480 (App. Div. 1972), the court recognized a fifth exception, namely, "the absence of adequate consideration for the sale or transfer." Id. at 561.

On appeal, Booth argues that two of the exceptions we have identified militate in favor of imposing corporate successor liability on DFH. Specifically, Booth asserts that DFH's APA resulted in a de facto merger or "mere continuation" of Carlyle, Avery and Sleepable. We are satisfied Judge Wilson properly rejected these arguments.

To determine if a de facto merger or a mere continuation exception exists, courts tend to focus on four factors:

> [(1)] continuity of management, personnel, physical location, assets, and general business operations; [(2)] a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; [(3)] assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and [(4)] continuity of ownership/shareholders.
>
> [Woodrick v. Jack J. Burke Real Estate, Inc., 306 N.J. Super. 61, 73 (App. Div. 1997) (quoting Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 275-76 (D.N.J. 1994)).]

Judge Wilson weighed such factors, as well as the specific terms of the APA when considering Booth's arguments. He referred to Section 1.01 of the APA and found DFH agreed to purchase only certain enumerated assets from Carlyle and Avery, who were collectively designated as "Seller" in the APA. Judge Wilson also quoted Section 1.02 of the APA, entitled "Excluded Assets." The judge noted DFH and the Seller agreed:

> Notwithstanding the provisions of Section 1.01 to the contrary, the properties, assets and rights of the [S]eller described below are expressly excluded from the transactions contemplated by this Agreement and are not included in the Purchased Assets (the "Excluded Assets"): . . . e) all leases not otherwise included in the Purchased Assets, pursuant to which Seller, as lessee, leases personal or real property . . . .

Judge Wilson further confirmed the APA provided that as of the closing date, DFH would assume and agree to perform only the obligations of Carlyle and Avery which were set forth in the "Assumed Contracts" section, provided the counter-party to such contracts consented to the assignment. He also noted the APA listed specific liabilities DFH assumed. For example, DFH was to assume Carlyle's Valley National Bank loan, the Stronger New Jersey Business Loan between Sleepable and the New Jersey Economic Development Authority (NJEDA), and Avery's "D&D Building Lease."

7

Next, Judge Wilson observed that DFH is being sued by Sleepable, Carlyle and Avery and that the most "distinguishable [factor] from <u>Woodrick</u> is the fact that Carlyle and Avery . . . continue to exist as corporate entities, along with Sleepable . . . ." He added that Sleepable "was not a party to the APA, and no assets of [Sleepable] were purchased by DFH pursuant to the terms of the APA." Moreover, Judge Wilson was satisfied DFH was never a party to the sublease and there was "nothing in the record to indicate DFH assumed the [sublease] through the APA. This is because the specific assets purchased by DFH pursuant to the APA did not include the [s]ublease. . . ."

As Judge Wilson found, the record is devoid of evidence that DFH made any representations to Booth about the sublease. Also, DFH did not collect a security deposit from Booth in connection with the sublease, nor did it ever receive or retain any monthly rent from Booth. As we have indicated, DFH did not even exist when Booth entered the sublease with Sleepable. After reciting these and other findings, Judge Wilson determined DFH was not a successor or mere continuation of Sleepable, Carlyle or Avery and that no de facto merger had occurred. His conclusions are fully supported by the record.

We briefly comment on Booth's complaint only to note that Judge Wilson painstakingly reviewed the basis for each cause of action that Booth lodged

A-3064-18T3

against DFH. The judge's considered analysis of Booth's complaint provides no grounds for appellate relief to Booth.

Our review of a grant of summary judgment is de novo, applying the same standards that governed the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment as a matter of law." R. 4:46-2. Having considered the record in light of our standard of review and providing Booth with all favorable inferences drawn from the extensive record, we perceive no basis to disturb Judge Wilson's summary judgment ruling.

We also see no reason to disturb Judge Wilson's denial of additional discovery to Booth. The discovery period in this action ended on October 8, 2018 and the trial was scheduled to begin on March 6, 2019. However, Booth's application for discovery was not filed until January 16, 2019, well after the discovery end date.

To prevail on its belated discovery application, Booth needed to demonstrate it was entitled to additional discovery due to "exceptional circumstances." R. 4:24-1(c). Specifically, Booth had to address: (1) why discovery had not been completed within time (including counsel's diligence in pursuing discovery

during that time); (2) whether the additional discovery or disclosure sought was essential; (3) what counsel's explanation for failure to request an extension of the time for discovery within the original discovery period entailed; and (4) whether the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time. Vitti v. Brown, 359 N.J. Super. 40, 51 (Law Div. 2003). Judge Wilson concluded Booth failed to address any of these inquiries to establish "exceptional circumstances." Booth does not dispute this failure.

We are obliged to "defer to the trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health System, Inc. v. Horizon Healthcare Services, Inc., 230 N.J. 73, 79-80 (2017). Given our standard of review, we affirm Judge Wilson's discovery ruling substantially for the reasons expressed in his thoughtful and exhaustive opinion.

Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3064-18T3